**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

|  |  |
|---|---|
| **DENNIS GOYETTE,** *individually and on behalf of all others similarly situated,*<br><br>**Plaintiff,**<br><br>-v-<br><br>**EQUIFAX INFORMATION SERVICES, LLC,**<br><br>**Defendant.** | Civil Case Number:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.    Plaintiff, Dennis Goyette ("Plaintiff"), brings this putative class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA") alleging that Equifax Information Services, LLC ("Equifax") has negligently and recklessly disseminated false and damaging information regarding the Plaintiff's and the Class members' credit, and woefully failed to maintain reasonable procedures regarding the accuracy of its consumer reports.

2.    Equifax is a consumer reporting agency that has been wrongfully misreporting accounts on Plaintiff Dennis Goyette's consumer report that had been properly discharged in his joint bankruptcy with his wife. Particularly egregious here is that Equifax *is* reporting the same accounts accurately on Plaintiff's wife's consumer

-1-

report.

3.      The fact that the same account, included in the same bankruptcy, is being reported two different ways by Equifax plainly elicits that it does not have the adequate policies and procedures in place to ensure that it prevents such logically inconsistent and inaccurate information from being reported on consumers' reports.

4.      Plaintiff, individually and on behalf of the Class members, seeks statutory and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

5.      The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  All defendants regularly conduct business within the State of Florida and violated Plaintiff's rights under the FCRA in the State of Florida as alleged more fully below.

6.      Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendants conducts business in this District, and communications giving rise to this action occurred in this District.

## PARTIES

7.      Plaintiff, Dennis Goyette ("Plaintiff"), is a resident of Sarasota County, Florida and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.      Defendant Equifax Information Services, LLC is also one of the largest credit reporting agencies in the United States and is engaged in the business of

assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

9. Equifax is a limited liability company with its principal place of business located at 1550 Peachtree Road, Atlanta, Georgia 30092.

## FACTUAL ALLEGATIONS

10. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

11. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

12. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

13. Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in

the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

14.    The CRAs regularly obtain consumer bankruptcy information to include in consumer reports.

15.    The CRAs regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

16.    Most institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs to make lending decisions.

17.    Despite the availability of accurate consumer information, the CRAs regularly report inaccurate information about accounts after consumers receive a Discharge Order.

18.    Plaintiff filed a joint Chapter 7 Bankruptcy with his wife, Peggy Goyette, on or about December 26, 2024, in the United States Bankruptcy Court in the Middle District of Florida.

19.    A discharge was granted in Plaintiff's bankruptcy case on or about April 8, 2025, including a number of relevant debt and/or credit accounts for which he was no longer obligated, such as his Achieva Credit Union joint credit card account, Account No. *1038 (the "Achieva Account").

20.    Defendant obtained notice of Plaintiff's bankruptcy discharge through its

-4-

routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

21.    Indeed, Plaintiff's consumer report with Equifax contains record of the grant of his bankruptcy petition, as well as the appropriate notation on many of the accounts discharged therein.

22.    However, in or around June of 2026, Plaintiff discovered that Equifax was reporting his Achieva Account as Status: 30-59 days past due; a balance of $7,306, and an amount past due of $289, as of a dated reported of May 28, 2026.

23.    This information is inaccurate, misleading, and logically inconsistent, as this account was discharged in Plaintiff's joint bankruptcy on or around April 8, 2025.

24.    Notably and particularly egregious here, this account was a joint account maintained with Plaintiff's wife, Peggy Goyette. Indeed, Equifax lists this tradeline as a "joint account," and a review of Mrs. Goyette's consumer report with Equifax indicates that the same account is being reported correctly as discharged in bankruptcy with a $0 and no amount past due.

25.    Pursuant to Section 1681e(b) of the FCRA, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

26.    Upon information and belief, Equifax fails to have such reasonable

procedures, as it allows for inaccurate and damaging logical inconsistencies to appear on consumers' reports; namely, the misreporting of the Achieva Account on Plaintiff's report, despite the fact that 1) it was notified of his bankruptcy and the discharge of this account; and 2) it is correctly reporting the exact same account on the joint owner's report.

27.    Upon information and belief, Equifax fails to have reasonable procedures to ensure the accurate reporting of joint accounts associated with joint bankruptcy filings.

28.    Upon information and belief, countless other individuals have similarly been affected by Equifax's insufficient procedures and misreporting of joint accounts discharged in joint bankruptcies.

29.    Defendant is aware that it is generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

30.    Accordingly, it should have reported the Achieva account as included in bankruptcy with a zero-dollar balance on Plaintiff's consumer report, as it did on Mrs. Goyette's reports.

31.    As a direct and proximate result of Defendant's willful and/or negligent failure to maintain reasonable procedures as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the diminishing impact that this derogatory

information has had on his credit score and the reputational harm that Plaintiff has suffered as a result of having this negative information attributed to him and disseminated to creditors.

32.     The inaccurate reporting on Plaintiff's credit report has caused and continues to cause significant harm in Plaintiff's daily life. Plaintiff relies on the accuracy of his credit reports to obtain credit. Because of Defendants' inaccurate reporting, Plaintiff's credit score has been unfairly lowered. The false derogatory information also undermines Plaintiff's reputation for financial responsibility and subjects Plaintiff to embarrassment and frustration each time his credit is reviewed or discussed with potential lenders.

33.     Beyond financial consequences, the inaccurate reporting has caused Plaintiff substantial emotional distress, anxiety, and inconvenience. Each time Plaintiff applies for credit or a loan, the inaccurate information resurfaces and creates uncertainty about his financial future. The continued presence of false negative data on Plaintiff's report has caused Plaintiff to lose confidence in the fairness of the credit system and to suffer tangible harm to his personal life.

34.     These injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate.

35.     At all times pertinent hereto, Equifax's conduct was willful and/or negligent, and carried out in reckless disregard for a consumer's rights as set forth under section 1681e of the FCRA. Accordingly, Plaintiff and the Class are entitled to

statutory and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

36.    As a direct and proximate result of the Defendant Equifax's willful and/or negligent refusal to assure maximum accuracy of credit reports as mandated by the FCRA, Plaintiff and the Class members have been harmed in their daily lives, by the impact that this derogatory information has had on their credit scores and their ability to secure credit, as addressed above.

## CLASS ALLEGATIONS

37.    Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated.

38.    The Class consists of: All natural persons residing in the United States on whom, beginning two years prior to the filing of this action through the grant of class certification, Equifax 1) compiled and published to a third-party a credit report;  2) containing a joint account that was included in a joint bankruptcy discharge; 3) without reflecting that the account had been included discharged in bankruptcy and had a zero-dollar balance; and 4) where it was reporting the account as having been included discharged in bankruptcy on the other joint owner's consumer report.

39.    Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

40.    Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to

Defendant releases of all their claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

41.    **Numerosity.** The Class is so numerous that joinder of all members is impracticable. At this time, Plaintiff does not know the exact size of the Class. Based on information and belief, the Class is comprised of at least hundreds, if not thousands, of members who are geographically dispersed throughout the country so as to render joinder of all Class members impracticable. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

42.    **Commonality.** Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The primary common legal and factual questions are:

    a.    Whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures in preparing and selling consumer reports;

    b.    Whether Plaintiff and the Class have been injured by Defendant's conduct;

    c.    Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and if so,

the proper measure and appropriate formula to be applied in determining such damages and restitution; and

d. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

43.    **Typicality**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that he seeks for absent class members.

44.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex consumer and class-action litigation. Plaintiff's counsel have prosecuted complex consumer class actions across the country.

45.    **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

46.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

**COUNT I**
**FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY**
**15 U.S.C. § 1681e(b)**
**AGAINST EQUIFAX**

47.    All preceding paragraphs are realleged.

48.    Plaintiff brings this claim individually and on behalf of all others similarly situated.

49.    Section 1681e(b) of the FCRA requires that, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b) (emphasis added).

50.    Accordingly, Equifax was required to follow procedures to assure maximum possible accuracy of the credit reports it prepared concerning Plaintiff and the Class. This includes following procedures to prevent facially inaccurate and logically inconsistent information associated with bankruptcies, such as reporting the same account correctly on one joint owner's report, and inaccurately reporting it with a balance, amount past due, and not included in bankruptcy on the other joint owner's

report.

51.     However, Equifax failed to do so.

52.     Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepared concerning Plaintiff and the Class members, it would not be possible for it to report inaccurate and logically inconsistent information such as the same discharged, joint account, with the same account number, included in the same joint bankruptcy, with material different statuses and obligations on the respective owners' reports, as it did on Plaintiff's and the Class members' reports.

53.     Moreover, if Equifax were meeting its obligation to follow procedures to assure maximum possible accuracy of the credit reports it prepares for Plaintiff and the Class members, it would have prevented this inaccurate and logically inconsistent information from being reported in the first place. Indeed, Equifax is vastly aware of bankruptcy filings and its obligations to report them accurately.

54.     As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff and the Class have been harmed, as explained above.

## DEMAND FOR TRIAL BY JURY

55.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff and the Class pray for relief follows:

A. That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their counsel to represent the Class;

B. That judgment be entered in favor of Plaintiff and the Class against Defendant for statutory damages and punitive damages pursuant to pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest

C. That the Court award the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

D. That the Court issue a declaration that Defendant's conduct alleged herein is unlawful, as set forth more fully above;

E. That the Court grant equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

F. That the Court grant Plaintiff and the Class such other and further relief as may be just and proper.

Dated: June 24, 2026

/s/ Joseph H. Kanee
Joseph H. Kanee, Esq.
Florida Bar No. 1040922
MARCUS & ZELMAN, LLC
1508 SW 23rd Street
Fort Lauderdale, FL 33315
Tel.: (848) 346-4358
Email: joseph@marcuszelman.com
*Attorney for Plaintiff and the proposed Class*